UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| AMBER DELEON, | § |
| | § |
|     Plaintiff, | § |
| vs. | §    CIVIL ACTION NO. H-09-1022 |
| | § |
| CITY OF ALVIN POLICE | § |
| DEPARTMENT, *et al*, | § |
| | § |
|     Defendants. | § |

**MEMORANDUM OPINION AND ORDER**

**I.   INTRODUCTION**

Pending before the Court is the defendant's, Linda Smith ("Smith"), motion to dismiss for failure to state a claim and memorandum of law in support thereof (Docket Entry Nos. 13 & 14) and the plaintiff's, Amber DeLeon (the "plaintiff"), response in opposition to Smith's motion (Docket Entry No. 20). After having carefully reviewed the pleadings, the motion, response and the applicable law, the Court is of the opinion that Smith's motion to dismiss should be GRANTED in part and DENIED in part.[1]

**II.   FACTUAL BACKGROUND**

The plaintiff is a profoundly deaf individual and requires a qualified sign language interpreter to facilitate communication. On or about April 5, 2007, the plaintiff

---

[1] On October 19, 2009, Smith filed the instant motion to dismiss for failure to state a claim pursuant to FED. R. CIV. P. 12(b)(6), seeking the dismissal of a myriad of claims alleged against her by the plaintiff. On November 2, 2009, the plaintiff filed her First Amended Original Complaint, asserting only two causes of action against Smith, mainly a claim for violation of Title II of the American with Disabilities Act and a claim for violation of Section 504 of the Rehabilitation Act. Because the Court finds the plaintiff's amendment to be timely, Smith's motion to dismiss with respect to the plaintiff's abandoned claims will be DENIED as moot.

called the 911 operator servicing the City of Alvin using a TTY[2] telephone to report that she had been assaulted by her brother. She contends, however, that the 911 operator was not equipped to handle her TTY call and as a result, dispatched an Alvin Police Department patrol car to her residence using the information obtained from Caller-ID. When the patrol car arrived at her residence, the police officers began speaking with the plaintiff's brother and mother and were informed by them that the plaintiff had assaulted her brother. The plaintiff contends that there was no way for her to explain to the officers that she was the complainant, not her brother. As a consequence, she argues that she was placed in hand restraints by the officers and transported to the Alvin City Jail. She acknowledges that she was uncooperative during this process because she did not understand the reason for her arrest.

The plaintiff asserts that after being booked in the Alvin City Jail, a full body cavity search for contraband and concealed weapons was performed on her by three officers, referred to by her as Does III, IV and V. She avers that, without warning, she was stripped bare and forcibly turned over a table face down where Jane Doe I climbed onto the table and placed her knee onto the plaintiff's back while one of the other John Does violated the plaintiff's rectum and vagina. She asserts that afterward, John Doe III slammed her head against the concrete floor causing her cochlear implant to vibrate, resulting in agonizing pain to her head and ears. She maintains that at no time were her Miranda rights administered to her. Shortly thereafter, she was transferred to the Brazoria County Jail.

---

[2] TTY is an acronym for "Tele Typewriter" or "Text Telephone." A TTY is a special device that lets people who are deaf, hard of hearing, or speech-impaired use the telephone to communicate, by allowing them to type text messages. A TTY is required at both ends of the conversation, however, in order to facilitate communication.

After being booked in the Brazoria County Jail, the plaintiff was eventually brought before Judge Jerome Jozwiak, Precinct 3, Place 1, who concluded that probable cause existed to detain her. The plaintiff also contends that at no time during her arraignment was there any effort made to provide her with a qualified sign language interpreter or any other mechanism to assist with effective communication relative to her detention.

Subsequently, the plaintiff was returned to the Brazoria County Jail, where she alleges that she was kept in a cell for ten days without a bed or toilet paper. During five of those days, she asserts that she remained unclothed and exposed. At some point during her detention, she asserts that Smith, a social worker from Brazoria County Community Mental Health, Mental Retardation and Recovery Services Center ("MHMR"), interviewed her without the assistance of a qualified sign language interpreter.

Jeri Yenne, the Brazoria County District Attorney, eventually contacted Detra Stewart ("Stewart"), a Deafness and Hearing Loss Resource Specialist, to informally investigate the circumstances surrounding the plaintiff's arrest and detention. The plaintiff contends that Yenne admitted that she was being detained "because there was no plan or policy in place to deal with a deaf prisoner." Soon thereafter, the plaintiff was released to Stewart and all charges were dropped.

On April 6, 2009, the plaintiff filed the instant action against numerous individuals and governmental entities, including Smith, alleging claims for, *inter alia*, violations of her Fourth, Fifth, Eighth and Fourteenth Amendment rights under 42 U.S.C. § 1983, violations of Title II of the American with Disabilities Act ("ADA") and

violations of Section 504 of the Rehabilitation Act ("Rehabilitation Act").  With regard to Smith, the plaintiff has alleged claims for violations of the ADA and Rehabilitation Act.  Smith now moves to dismiss the plaintiff's claims against her pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim.

### III.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes a defendant to move to dismiss for "failure to state a claim upon which relief may be granted."  FED. R. CIV. P. 12(b)(6).  Under the demanding strictures of a Rule 12(b)(6) motion, "[t]he plaintiff's complaint is to be construed in a light most favorable to the plaintiff, and the allegations contained therein are to be taken as true."  *Oppenheimer v. Prudential Sec., Inc.*, 94 F.3d 189, 194 (5th Cir. 1996) (citing *Mitchell v. McBryde*, 944 F.2d 229, 230 (5th Cir. 1991)).  Dismissal is appropriate only if, the "[f]actual allegations [are not] enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965, 167 L.Ed.2d 929 (2007).  Moreover, in light of Federal Rule of Civil Procedure 8(a)(2), "[s]pecific facts are not necessary; the [factual allegations] need only 'give the defendant fair notice of what the  . . . claim is and the grounds upon which it rests."  *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1964).  Even so, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964 - 65 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 92 L.Ed.2d 209 (1986)).

More recently, in *Ashcroft v. Iqbal*, the Supreme Court expounded upon the *Twombly* standard, reasoning that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, ---U.S. ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. at 1974). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, ---U.S. ----, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. at 1955). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show [n]'-'that the pleader is entitled to relief.'" *Ashcroft*, ---U.S. ----, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)).

Nevertheless, when considering a 12(b)(6) motion to dismiss, the Court's task is limited to deciding whether the plaintiff is entitled to offer evidence in support of his or her claims, not whether the plaintiff will eventually prevail. *Id.* at 563, 1969 n.8 (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L.Ed.2d 90 (1974)); *see also Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999). In this regard, the Court's review is limited to the allegations in the complaint and to those documents attached to a defendant's motion to dismiss to the extent that those documents are referred to in the complaint and are central to the claims. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004).

## IV.    ANALYSIS AND DISCUSSION

In this case, the plaintiff alleges that Smith, a social worker for Brazoria County MHMR, violated her rights under Title II of the ADA by failing to make a qualified sign language interpreter available to her while she was being detained in the Brazoria County

Jail.  She further contends that Smith was acting under color of law and within the course and scope of her employment at the time of the alleged violation.  In contrast, Smith alleges that the plaintiff's ADA and Rehabilitation Act claims against her fail as a matter of law because she cannot be sued in her individual capacity for the violations alleged.  This Court agrees.

The United States Supreme Court has described claims for money damages under Title II of the ADA as follows:

> Title II of the ADA provides that 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.'  A 'qualified individual with a disability' is defined as 'an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.'  The Act defines 'public entity' to include 'any State or local government' and 'any department, agency, . . . or other instrumentality of a State' . . . .  Title II authorizes suits by private citizens for money damages against public entities that violate [42 U.S.C.] § 12132.

*United States v. Georgia*, 546 U.S. 151, 126 S.Ct. 877, 878-79, 163 L.Ed.2d 650 (2006) (citations and quotation marks omitted).  Thus, the plain language of the ADA "applies only to *public entities* and does not contemplate holding government employees liable in their individual capacities." *Gonzales v. City of Corpus Christi,* No. C.A. C-05-280, 2006 WL 1517507, at *5 (S.D. Tex. May 31, 2006) (emphasis in original); *see also Georgetown v. Tran*, Civil Action No. 01-1584, 2002 WL 818079, at *3 (E.D. La. Apr. 25, 2002) (reasoning that "the term 'public entity' as used in Title II does not include individuals"); *Joseph v. Port of New Orleans*, Civil Action No. 99-1622, 2002 WL 342424, at *10 (E.D. La. Mar. 4, 2002) ("The majority of courts that have addressed the issue have held that the ADA does not

permit claims against persons in their individual capacities."), *aff'd*, No. 02-30297, 2002 WL 31933280 (5th Cir. Dec.27, 2002).

The same holds true for claims brought pursuant to the Rehabilitation Act, as the Fifth Circuit has routinely observed that "the ADA and the Rehabilitation Act are essentially identical in scope." *Id.* (citing, *e.g.*, *Pace v. Bogalusa City School Bd.,* 403 F.3d 272, 287 - 88 (5th Cir. 2005); *Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000)) (other citations omitted). "The language in the ADA generally tracks the language set forth in the [Rehabilitation Act]. In fact, the ADA expressly provides that '[t]he remedies, procedures and rights' available under the [Rehabilitation Act] are also accessible under the ADA." *Delano-Pyle v. Victoria County, Tex.*, 302 F.3d 567, 574 (5th Cir. 2002) (quoting 42 U.S.C. § 12133 (1995)). This finding is supported by the Fifth Circuit's decision in *Lollar v. Baker*. 196 F.3d 603 (5th Cir. 1999). In *Lollar v. Baker*, for instance, the Fifth Circuit determined that the statutory language of the Rehabilitation Act--reminiscent of that of the ADA--precluded a plaintiff from asserting a claim under the Rehabilitation Act against a governmental official in her individual capacity. *Lollar v. Baker*, 196 F.3d at 609. Because neither the ADA nor the Rehabilitation Act provide for liability against governmental officers in their individual capacities, Smith's motion to dismiss the plaintiff's claims against her in her individual capacity under the ADA and Rehabilitation Act should be granted.

## V.     CONCLUSION

Based on the foregoing discussion, Smith's motion to dismiss is GRANTED with respect to the plaintiff's claims brought pursuant to the ADA and Rehabilitation Act and DENIED as moot with respect to the plaintiff's remaining claims.

IT IS SO **ORDERED**.

SIGNED at Houston, Texas this 9th day of November, 2009.

_____
Kenneth M. Hoyt
United States District Judge