UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AMBER DELEON, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. H-09-1022 |
| | § | |
| CITY OF ALVIN POLICE DEPARTMENT, *et al*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

**I.  Introduction**

Pending before the Court is the defendant's, City of Alvin, motion for summary judgment (Docket Entry No. 83).[1]  The plaintiff, Amber DeLeon, filed a response in opposition (Docket Entry No. 84).  After having carefully reviewed the motion, the response, the record and the applicable law, the Court GRANTS the defendant's motion.

**II.  Factual Background**

The plaintiff is a profoundly deaf individual and requires a qualified sign language interpreter to facilitate communication.  On or about April 5, 2007, the plaintiff called the 911 operator servicing the City of Alvin using a TTY[2] telephone to report that her brother assaulted her.  The plaintiff contends that the 911 operator was not equipped to handle her TTY call, but merely dispatched an Alvin Police Department patrol car to her residence using the information obtained from Caller-ID.  When the police officers arrived at her residence, they spoke with the

---

[1] In the plaintiff's current pleading (Docket Entry No. 54), she named the following defendants: City of Alvin, Mike Merkel, John Does III-VI, Officer G. White, Officer Green, Brazoria County, Jack Alan Brown, Jane Doe and Brazoria County Community Supervision and Corrections Department.  This memorandum concerns only the plaintiff's claims against the City of Alvin.

[2] TTY is an acronym for "Tele Typewriter" or "Text Telephone."  A TTY is a special device that lets people who are deaf, hard of hearing or speech-impaired use the telephone to communicate by allowing them to type text messages.  However, a TTY is required at both ends of the conversation to facilitate communication.

1 / 10

plaintiff's family members. Her brother and cousin claimed that the plaintiff had attacked her brother with a knife.

The officers arrested her and transported her to the Alvin City Jail. The plaintiff acknowledges that she was uncooperative during this process, but claims that she did not understand the reason for her arrest. At Alvin City Jail, at least one officer performed a full body cavity search of her.[3] Shortly thereafter, she was transferred to the Brazoria County Jail. On April 6, 2009, the plaintiff filed the instant action against numerous individuals and governmental entities, including the defendant.

## III. Contentions of the Parties

### A. The Plaintiff's Contentions[4]

The plaintiff contends that the defendant proximately caused her purported injuries by intentionally discriminating against her based upon her disability, in violation of Title II of the Americans with Disabilities Act ("ADA")[5] and Section 504 of the Rehabilitation Act of 1973 ("RA").[6] First, she asserts that the defendant denied her the access, use and benefit of the defendant's 911 emergency response services. Second, she asserts that the defendant failed to provide her with a qualified American Sign Language interpreter or any other effective means of communication at the scene of her arrest. She contends that there was no way for her to explain to the officers that she – not her brother – had called 911. Third, she maintains that the defendant did not timely provide her with the name of its ADA or RA Coordinator. She claims that the defendant's failure to provide a qualified interpreter led both to her faulty arrest and to

---

[3] The plaintiff has been arrested before. During a prior arrest, the plaintiff had concealed a knife in her underwear and then used it to damage her jail cell.

[4] On March 9, 2010, the Court dismissed the plaintiff's claims against Police Chief Mike Merkel (Docket Entry No. 76). The plaintiff never served Officers White or Green or any of the "Doe defendants." Thus, the Court is not addressing her claims against the City's employees acting in their official capacities. Rather, the Court is only addressing the plaintiff's claims against the City itself in this motion.

[5] 42 U.S.C. §§ 12131-12165.

[6] 29 U.S.C. § 794.

her subsequent physical and mental injuries when the police searched her body cavities at Alvin City Jail. Finally, she seeks for injunctive relief from further ADA and RA violations on behalf of all deaf and hard-of-hearing residents of the City of Alvin.

### B. The Defendant's Contentions

The defendant contends that no material fact exists as to whether it intentionally discriminated against the plaintiff because of her disability. First, the defendant claims the plaintiff has not shown that the defendant denied her any service, program or activity for which it is responsible. Second, the defendant claims that the arresting officers permissibly arrested the plaintiff based upon the testimony of multiple eyewitnesses at the arrest scene. Third, the defendant claims that the officers at Alvin City Jail acted permissibly during the plaintiff's booking and intake process and that the defendant did not need to notify the plaintiff of its ADA coordinator. Finally, the defendant asserts that the plaintiff lacks standing to obtain injunctive relief because she can show no threat of immediate, irreparable harm to justify injunctive relief.

### IV. Standard of Review

Federal Rule of Civil Procedure 56 authorizes summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to that party's case and on which that party bears the burden at trial. *See, Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). The movant bears the initial burden of "informing the Court of the basis of its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323; *see also, Martinez v. Schlumber*, *Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003). Summary judgment is appropriate if "the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

If the movant meets its burden, the burden then shifts to the nonmovant to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996) (citing *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995); *Little*, 37 F.3d at 1075). "To meet this burden, the nonmovant must 'identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s].'" *Stults*, 76 F.3d at 656 (quoting *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994)). The nonmovant may not satisfy its burden "with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (internal quotation marks and citations omitted). Instead, it "must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *American Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (quoting *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998)).

"A fact is material only if its resolution would affect the outcome of the action . . . and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the [nonmovant].'" *Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009) (internal citations omitted). When determining whether the nonmovant has established a genuine issue of material fact, a reviewing court must construe "all facts and inferences . . . in the light most favorable to the [nonmovant]." *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005) (citing *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003)). Likewise, all "factual controversies [are to be resolved] in favor of the [nonmovant], but

only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Boudreaux*, 402 F.3d at 540 (citing *Little*, 37 F.3d at 1075 (emphasis omitted)). Nonetheless, a reviewing court may not "weigh the evidence or evaluate the credibility of witnesses." *Boudreaux*, 402 F.3d at 540 (citing *Morris*, 144 F.3d at 380). Thus, "[t]he appropriate inquiry [on summary judgment] is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

## V.     Analysis and Discussion

The Court grants the defendant's motion for summary judgment. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.[7] "To make a *prima facie* case under Title II [of the ADA] a plaintiff must show: (1) that [she] has a qualifying disability; (2) that [she] is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of [her] disability." *Frame v. City of Arlington*, 616 F.3d 476, 482 (5th Cir. 2010) (citing *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671-72 (5th Cir. 2000)).[8]

---

[7] The Court will consider the plaintiff's ADA claims and her RA claims together, because the two statutes provide parallel remedies. *See, Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000); 42 U.S.C. § 12133. "The language in the ADA generally tracks the language set forth in the RA. In fact, the ADA expressly provides that 'the remedies, procedures and rights' available under the RA are also accessible under the ADA." *Delano-Pyle v. Victoria County, Tex.*, 302 F.3d 567, 574 (5th Cir. 2002) (quoting 42 U.S.C. § 12133 (1995)).

[8] Further, "[a] plaintiff asserting a private cause of action for violations of the ADA or RA may only recover compensatory damages upon a showing of intentional discrimination." *Delano-Pyle,* 302 F.3d at 574 (internal citation omitted). Discriminatory intent is necessary because the ADA incorporates the RA's remedies. *See*, 42 U.S.C. § 12133. In turn, the RA incorporates the remedies of Title IV of the Civil Rights Act of 1964. *See*, 29

Moreover, the mere violation of the ADA alone does not establish injury. Rather, the plaintiff is obligated to show, by competent evidence, that the defendant's violation of the ADA proximately caused her actual injury before she can recover. *See*, *Armstrong v. Turner Indus., Inc.*, 141 F.3d 554, 562 (5th Cir. 1998) (holding "that damages liability [under the ADA] must be based on something more than a mere violation of that provision. There must be some cognizable injury in fact of which the violation is a legal and proximate cause for damages to arise from a single violation."). The Court finds that the plaintiff has failed to establish the third element of her *prima facie* case because she has not offered sufficient evidence that the defendant discriminated against her "by reason of [her] disability." *See*, *Frame*, 616 F.3d at 482 (citing *Melton*, 391 F.3d at 671-72).

### A.   The Plaintiff's 911 Call and Arrest –Related Claims

At issue here is whether the defendant proximately caused the plaintiff's alleged injuries by failing to reasonably accommodate her disability in violation of the ADA. For the reasons set forth below, the Court determines that the plaintiff has not shown that a material fact exists with respect to this issue.

The circuit courts that have addressed the ADA's applicability to police arrests have identified two theoretical bases for these claims. *See*, *Gohier v. Enright*, 186 F.3d 1216, 1220 (10th Cir. 1999) (surveying the case law concerning the ADA's applicability to arrests). The applicable basis here is the "reasonable accommodation" theory.[9] In the reasonable

---

U.S.C. § 794(a); 42 U.S.C. § 2000d. Under Title IV, and thus under the ADA, compensatory damages are available only where there is "intentional discrimination." *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 533-34 (1999).

[9] The other (inapplicable) theory is the "wrongful arrest" theory. In the "wrongful arrest" scenario, police wrongly arrest a disabled individual because the police misperceive the effects of his disability as criminal activity. *See*, *Lewis v. Truitt*, 960 F. Supp. 175, 176-78 (S.D. Ind. 1997) (holding that the plaintiff stated a viable ADA claim by demonstrating: "(1) he was disabled; (2) [the arresting officers] knew or should have known he was disabled; and (3) [the officers] arrested him because of legal conduct related to his disability." (internal citation omitted)). For example, police may sometimes mistake a person as intoxicated (slurred speech, shuffled gait) when that person is actually exhibiting the effects of a stroke. *See*, *Jackson v. Inhabitants of the Town of Sanford*, No. 94-12-P-H, 1994

accommodation scenario, police properly investigate and arrest a disabled person for a crime unrelated to that disability, but fail to reasonably accommodate that person's disability in the course of the investigation or arrest, thereby "causing the person to suffer greater injury or indignity in that process than other arrestees." *Gohier*, 186 F.3d at 1220 (internal citations omitted); *see also*, *Hainze*, 207 F.3d at 801.

However, the Fifth Circuit has noted that "Title II does not apply to an officer's on-the-street responses to reported disturbances or other similar incidents, whether or not those calls involve subjects with mental disabilities, prior to the officer's securing the scene and ensuring that there is no threat to human life." *Hainze* at 801. The Fifth Circuit further explained:

> Law enforcement personnel conducting in-the-field investigations already face the onerous task of frequently having to instantaneously identify, assess, and react to potentially life-threatening situations. To require the officers to factor in whether their actions are going to comply with the ADA, in the presence of exigent circumstances and prior to securing the safety of themselves, other officers, and any nearby civilians, would pose an unnecessary risk to innocents.

*Id; see also*, *Rosen v. Montgomery County Maryland*, 121 F.3d 154, 158 (4th Cir. 1997) ("If we assume . . . that police were required to provide auxiliary aids at some point in the [arrest] process, that point certainly cannot be placed before the arrival at the stationhouse.").

Even if the Court were to accept the plaintiff's version of events as true, her testimony fails to raise a fact establishing a viable claim for damages under the ADA. While the parties do dispute whether the 911 operator had and could use a functional TTY device, the police did respond to the 911 call coming from the plaintiff's residence. When the police arrived, they found her brother bleeding from a fresh, defensive knife wound. Both her brother and her cousin said that she had attacked her brother with a knife. Her brother further stated that if she were not arrested, she would assault him again. Given these exigent circumstances, the police had a right

---

WL 589617, at *6 (D. Me, Sept. 23, 1994). The plaintiff's case does not fit this mold because the officers here did not confuse the plaintiff's deafness with any crime.

to arrest her immediately and secure the scene rather than call for a sign language interpreter. *See*, *Hainze* at 801.

Additionally, there is no evidence that the defendant intentionally discriminated against the plaintiff because of her disability. Even if she had been able to make herself understood through a TTY device or an interpreter at the scene of the arrest, she would not have avoided arrest on the spot. The officers had a right to believe the brother's account of his knife wounds, corroborated by the eyewitness report of a family member. Whether the plaintiff could have understood the conversations around her and related her version to the officers in these exigent circumstances is immaterial. *See*, *Tucker v. Tennessee*, 539 F.3d 526, 536 (6th Cir. 2008) ("There is no evidence that the provision of auxiliary aids, *i.e.*, a sign language interpreter would have changed the events in any way." (internal citation omitted)).

### B. The Plaintiff's Claim for Failure to Appoint an ADA Coordinator

At issue here is whether the defendant is liable for failing to provide the plaintiff notice of the identity of the defendant's ADA coordinator. Although the plaintiff's live pleading fails to reference any federal statute or regulation, presumably her claim is based upon one or more of the self-evaluative procedures required by 28 C.F.R. §§ 35.105-35.107. For the same reasons cited above in Section **V.A.**, the plaintiff's allegation fails. The defendant did not need to provide notice of its ADA coordinator before completing its booking and intake processes. The police had knowledge of a prior arrest where the plaintiff had concealed a weapon in her undergarments and secreted it into her cell at Alvin City Jail. Accordingly, to the extent that the officers had an obligation to notify the plaintiff of its ADA coordinator, they need not have done so before arresting her and searching her at the jail. For her own safety, the plaintiff was

transferred from that jail to the Brazoria County Jail shortly after being processed. Therefore, the plaintiff's claims fails.[10]

### C. Prospective Injunctive Relief

The Court determines that the plaintiff lacks standing to seek injunctive relief because she cannot demonstrate that she will suffer an injury in fact – *i.e.*, a "real and immediate threat" of repeated future harm – if the injunction is not granted. *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983). A plaintiff seeking an injunction against a local or state government must present facts showing "most extraordinary circumstances" before a federal court will intervene in this type of alleged police misconduct. *Rizzo v. Goode*, 423 U.S. 362, 379-80 (1976). A single alleged instance of disability discrimination, even if true, is insufficient to justify such an injunction. *See*, *Midgett v. Tri-County Metro. Transp. Dist. Of Oregon*, 74 F. Supp. 2d 1008, 1013-14 (D. Or. 1999) ("a strong factual record, showing an intentional and pervasive pattern of misconduct, is necessary to support an injunction against a state, as opposed to a federal, agency"), *aff'd*, 254 F.3d 846 (9th Cir. 2001) (citing, *inter alia*, *Rizzo*, 423 U.S. at 375).

The Court finds that the plaintiff has offered no evidence of any real and immediate threat of repeated future harm to herself or others similarly situated. The Alvin Police Department has a TTY device available for hearing impaired persons calling 911, and the department has a written policy for protecting the rights of hearing impaired and deaf persons. Therefore, the Court grants the defendant's motion for summary judgment.

---

[10] Moreover, "The failure of a Title II public entity to adequately implement or abide by internal complaint procedures does not itself state an ADA claim, because the statute does not require these procedures." *Duffy v. Freed*, Civil No. 09-2978 (JBS/JS), 2010 U.S. Dist. LEXIS 98860, at *12 (D.N.J. Sept. 17, 2010) (internal citation omitted).

Further, even if there were a private right of action to enforce the regulations regarding notice and internal grievance procedures, the plaintiff "cannot plausibly allege an injury from the failure to follow these procedures since [she] could have filed a state or federal action at any time to obtain the relief [she] seeks." *See, Duffy*, 2010 U.S. Dist. LEXIS 98860 at *13-14 (internal citation omitted).

**VI.     Conclusion**

Based on the foregoing discussion, the Court GRANTS the defendant's motion.

It is so **ORDERED**.

SIGNED at Houston, Texas this 30th day of November, 2010.

_____
Kenneth M. Hoyt
United States District Judge