UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AMBER DELEON, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. H-09-1022 |
| | § | |
| CITY OF ALVIN POLICE DEPARTMENT, *et* | § | |
| *al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

### I.      Introduction

Pending before the Court is the defendants', Brazoria County and Justice of the Peace

Jack Brown, motion for summary judgment (Docket Entry No. 88).[1]   The plaintiff, Amber

DeLeon, filed a response (Docket Entry No. 90).   After having carefully reviewed the motion,

the response, the record and the applicable law, the Court grants the defendants' motion in its

entirety.

### II.      Factual Background

The plaintiff is a profoundly deaf individual and requires a qualified sign language

interpreter to facilitate communication.  On or about April 5, 2007, the plaintiff called the 911

operator servicing the City of Alvin using a TTY[2] telephone to report that her brother had

assaulted her.  When the police officers arrived at her residence, they spoke with the plaintiff's

---

[1] In the plaintiff's current pleading (Docket Entry No. 54), she named the following defendants: City of Alvin, Mike Merkel, John Does III-VI, Officer G. White, Officer Green, Brazoria County, Jack Alan Brown, Jane Doe and Brazoria County Community Supervision and Corrections Department.  This memorandum concerns only the plaintiff's claims against Brazoria County and Judge Brown.

[2] TTY is an acronym for "Tele Typewriter" or "Text Telephone."  A TTY is a special device that permits people who are deaf, hard of hearing or speech-impaired use the telephone to communicate by allowing them to type text messages.  However, a TTY is required at both ends of the conversation to facilitate communication.

family members.  Her brother and cousin claimed that the plaintiff had attacked her brother with a knife.

The officers arrested the plaintiff and transported her to the Alvin City Jail.  The plaintiff acknowledges that she was uncooperative during this process, but claims that she did not understand the reason for her arrest.  While in the Alvin City Jail, she tried to kill herself.  Shortly thereafter, she was transferred to the Brazoria County Detention Center.  There, the plaintiff was uncooperative with the detention center personnel's attempt to assess her mental and physical condition.  The personnel prepared an inmate crisis report on the plaintiff's behalf, which details that she was violent to the point that she was a danger to herself and others.  To prevent the plaintiff from physically harming herself, she was placed in a mental health cell pending mental health observation.  The detention center provided medical care to her and eventually gave her an interpreter to communicate with the detention center's nurse.

On April 8, 2007, Judge Brown gave the plaintiff her written statutory warnings.  She signed the warning document at the time Judge Brown issued it.  Now, the plaintiff claims that she gave Judge Brown a separate piece of paper on which she wrote that she did not understand what the warning document said and requested an interpreter.  She did not note any comprehension difficulties on the warning document that she signed.  On April 6, 2009, the plaintiff filed the instant action.

III.    **Contentions of the Parties**

A.    **The Plaintiff's Contentions**

Against the County, the plaintiff maintains that the activities, operation and conditions at the County's detention center are the County's responsibility,[3] giving rise to liability under Title

---

[3] And yet, ironically, the plaintiff voluntarily dismissed her suit against the detention center with prejudice.  *See* [Docket Entry No. 72].

II of the Americans with Disabilities Act ("ADA")[4] and Section 504 of the Rehabilitation Act of 1973 ("RA").[5]  The plaintiff asserts that the County failed to reasonably accommodate her disability in violation of her ADA/RA rights and did not provide her with the name of its ADA/RA coordinator.  The plaintiff avers that the County intentionally discriminated against her because of her disability by detaining her without criminal charges because the County had no place to put her as a deaf woman, and by failing to provide her an interpreter even after knowing one was needed.  The plaintiff insinuates that she was injured by being deprived of her personal liberty and subjected to punishment by the County's decision to keep her naked (except for a blanket) while detained in the County's detention center without formal charges.  The plaintiff contends that injunctive relief is appropriate on behalf of the County's deaf and hard of hearing citizens because the County had a policy addressing the hearing impaired community at the time that her complaint arose, but the County did not implement that policy.

Against Judge Brown, the plaintiff asserts that he also intentionally discriminated against her, in violation of her due process and civil rights, by refusing to provide a sign language interpreter after she requested one, pursuant to Texas Code of Criminal Procedure Article 15.17(c).  She seeks compensatory damages, costs, and declaratory and injunctive relief from further ADA/RA violations on behalf of all deaf and hard of hearing residents of the County.[6]

B.      The Defendants' Contentions

As for the County, the defendant contends that the plaintiff cannot raise a genuine issue of material fact to show that the County denied her any service, program or activity for which it is responsible.  The defendant maintains that the plaintiff cannot raise a genuine issue of material

---

[4] 42 U.S.C. §§ 12131-12165.

[5] 29 U.S.C. § 794.

[6] No class was ever certified.

fact to show that the County intentionally discriminated against her because of her disability, and that she cannot show that the County's alleged ADA/RA violations proximately caused her a cognizable injury in fact.  The defendant avers that no federal statute or regulation requires a Title II public entity to adequately implement the self-evaluative procedures outlined in 28 C.F.R. §§ 35.105-107, and so the plaintiff's allegation that the County failed to implement those procedures does not state a claim under the ADA/RA.

As for Judge Brown, the defendant asserts that Texas Code of Criminal Procedure Article 15.17(c) is inapplicable because the plaintiff's appearance before Judge Brown was not an arraignment.  The defendant alleges that injunctive relief is unwarranted because no genuine issue of material fact demonstrates a real or immediate threat of future harm.  The defendant submits that a declaratory judgment is unnecessary because no genuine issue of material fact demonstrates that a substantial legal controversy exists between parties having adverse legal interests of sufficient immediacy and reality.

## IV.    Standard of Review

Federal Rule of Civil Procedure 56 authorizes summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to that party's case and on which that party bears the burden at trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*).  The movant bears the initial burden of "informing the Court of the basis of its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex*, 477 U.S. at 323; *see also, Martinez v. Schlumber*, *Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003).  Summary judgment is appropriate if "the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

If the movant meets its burden, the burden then shifts to the nonmovant to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996) (citing *Tubacex*, *Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995); *Little*, 37 F.3d at 1075). "To meet this burden, the nonmovant must 'identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s].'" *Stults*, 76 F.3d at 656 (quoting *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994)). The nonmovant may not satisfy its burden "with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (internal quotation marks and citations omitted). Instead, it "must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *American Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (quoting *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998)).

"A fact is material only if its resolution would affect the outcome of the action . . . and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the [nonmovant].'" *Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009) (internal citations omitted). When determining whether the nonmovant has established a genuine issue of material fact, a reviewing court must construe "all facts and inferences . . . in the light most favorable to the [nonmovant]." *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005) (citing *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003)). Likewise, all "factual controversies [are to be resolved] in favor of the [nonmovant], but

only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Boudreaux*, 402 F.3d at 540 (citing *Little*, 37 F.3d at 1075 (emphasis omitted)).   Nonetheless, a reviewing court may not "weigh the evidence or evaluate the credibility of witnesses." *Boudreaux*, 402 F.3d at 540 (citing *Morris*, 144 F.3d at 380).   Thus, "[t]he appropriate inquiry [on summary judgment] is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

**V.       Analysis and Discussion**

The Court grants the defendants' motion for summary judgment in its entirety.   Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."   42  U.S.C. § 12132.[7]   "To make a *prima facie* case under Title II [of the ADA] a plaintiff must show: (1) that [she] has a qualifying disability; (2) that [she] is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity; and (3) that such discrimination is by reason of [her] disability." *Frame v. City of Arlington*, 616 F.3d 476, 482 (5th Cir. 2010) (citing *Melton v. Dallas Area Rapid Transit*, 391 F.3d 669, 671-72 (5th Cir. 2000)).[8]

---

[7] The Court will consider the plaintiff's ADA and RA claims together, because the two statutes provide parallel remedies. *See Hainze v. Richards*, 207 F.3d 795, 799 (5th Cir. 2000); 42 U.S.C. § 12133.   "The language in the ADA generally tracks the language set forth in the RA.   In fact, the ADA expressly provides that 'the remedies, procedures and rights' available under the RA are also accessible under the ADA." *Delano-Pyle v. Victoria County, Tex.*, 302 F.3d 567, 574 (5th Cir. 2002) (quoting 42 U.S.C. § 12133 (1995)).

[8] Further, "[a] plaintiff asserting a private cause of action for violations of the ADA or RA may only recover compensatory damages upon a showing of intentional discrimination." *Delano-Pyle,* 302 F.3d at 574 (internal citation omitted).   Discriminatory intent is necessary because the ADA incorporates the RA's remedies. *See* 42

A mere violation of the ADA alone does not establish injury. Rather, a plaintiff is obligated to show, by competent evidence, that a defendant's violation of the ADA proximately caused her actual injury before she can recover. *See Armstrong v. Turner Indus., Inc.*, 141 F.3d 554, 562 (5th Cir. 1998) (holding "that damages liability [under the ADA] must be based on something more than a mere violation of that provision. There must be some cognizable injury in fact of which the violation is a legal and proximate cause for damages to arise from a single violation."). The Court finds that, even if the plaintiff could prove that she was denied services for which the defendants are responsible, the plaintiff has failed to establish the third element of her *prima facie* case because she has not offered sufficient evidence that the defendants discriminated against her "by reason of [her] disability." *See Frame*, 616 F.3d at 482 (citing *Melton*, 391 F.3d at 671-72).

### A.     The Plaintiff's Claims against the County[9]

#### 1.     Failure to Provide Reasonable Accommodations

At issue is whether the County proximately caused the plaintiff's alleged injuries by failing to reasonably accommodate her disability in violation of the ADA. The Court determines that the plaintiff has not shown that a material fact exists with respect to this issue because she fails to establish any *prima facie* evidence of an ADA violation. The plaintiff provides no probative summary judgment evidence that the contested events were discriminatory events that

---

U.S.C. § 12133. In turn, the RA incorporates the remedies of Title IV of the Civil Rights Act of 1964. *See* 29 U.S.C. § 794(a); 42 U.S.C. § 2000d. Under Title IV, and thus under the ADA, compensatory damages are available only where there is "intentional discrimination." *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 533-34 (1999).

[9] Although not formally asserted as a cause of action in her third amended complaint, the plaintiff appears to allege that the County deprived her of personal liberty and subjected her to punishment by detaining her without clothing and with only a blanket. Even assuming that this claim is properly before the Court, the evidence does not indicate that such treatment was improper. She had been stripped and searched at the Alvin City Jail because, during a prior arrest, she had concealed a knife in her underwear and then used that knife to damage her jail cell. The allegations that led to her arrest in the present action also involved a knife. During her detention, she was non-communicative, violent, uncooperative and on mental health observation because she threatened to commit suicide. Further, the detention center eventually gave her clothing.

occurred because of her disability.  The plaintiff alleges that the County discriminated against her by failing to provide auxiliary aids and services to her for two days of her eight-day incarceration.  However, she has not shown that she was "being excluded from participation in, or being denied benefits of, services, programs, or activities for which the [public entity] is responsible, or [was] otherwise being discriminated against by the [public entity, and] that such exclusion, denial of benefits, or discrimination [was] *by reason of* [her] disability."  *Lightbourn v. County of El Paso, Texas*, 118 F.3d 421, 428 (5th Cir. 1997) (emphasis added).

When the plaintiff arrived at the County's detention center, detention center personnel tried to communicate with her to assess her needs.  She was non-communicative and combative, refusing to cooperate with them.  The personnel completed an initial assessment and an inmate crisis report, the latter of which indicated that she should be placed in a mental health cell.  The personnel also followed the detention center's policy for communicating with people who are hearing impaired, but the plaintiff would not cooperate.  The ADA's accommodation provisions do not require public entities to guess a non-cooperative individual's need for an accommodation.  *See, e.g., Randolph v. Rodgers*, 170 F.3d 850, 858 (8th Cir. 1999); *Lawrence v. Nat'l Westminster Bank New Jersey*, 98 F.3d 61, 69 (3d Cir. 1996) (stating that a defendant is not "expected to accommodate disabilities of which it is unaware" (internal citation omitted)); *Hedberg v. Indiana Bell Telephone Co., Inc.*, 47 F.3d 928, 934 (7th Cir. 1995) (stating that the "ADA does not require clairvoyance").

Rather, the general rule under the ADA is that a plaintiff must show "that the [defendant] knew not only of the [plaintiff's] disability, but also of the physical or mental limitations resulting therefrom."  *See Seaman v. CPSH, Inc.*, 179 F.3d 297, 300 (5th Cir. 1999) (internal citation omitted).   "Because an [individual's] disability and concomitant need for

accommodation are often not known to the [defendant] until the [individual] requests an accommodation, the ADA's reasonable accommodation requirement usually does not apply unless triggered by a request from the [individual]." *Reed v. LePage Bakeries, Inc.*, 244 F.3d 254, 261 (1st Cir. 2001) (internal quotation and citation omitted). Therefore, the Court grants summary judgment on this issue.

### 2.      Failure to Provide ADA Coordinator Information

At issue is whether the County is liable for failing to provide the plaintiff notice of the identity of the County's ADA coordinator. Although the plaintiff's live pleading fails to reference any federal statute or regulation, presumably her claim is based upon one or more of the self-evaluative procedures required by 28 C.F.R. §§ 35.105-107. Assuming that the plaintiff's claim does arise from those statutory provisions, then she is not entitled to relief because no private right of action exists under those provisions. *See Duffy v. Freed*, Civil No. 09-2978 (JBS/JS), 2010 U.S. Dist. LEXIS 98860, at *12 (D.N.J. Sept. 17, 2010) ("The failure of a Title II public entity to adequately implement or abide by internal complaint procedures does not itself state an ADA claim, because the statute does not require these procedures." (internal citations omitted)). Moreover, the plaintiff's unwillingness to communicate with the County precluded it from obtaining information from her or communicating any information to her. Therefore, the Court grants summary judgment for the defendants on this issue.

### B.      The Plaintiff's Claim against Judge Brown[10]

At issue is whether Judge Brown is liable for failing to make a qualified sign language interpreter available during the plaintiff's arraignment. The plaintiff mistakenly asserts a claim

---

[10] Technically, Judge Brown is not a party to this litigation because the plaintiff failed to serve him after substituting him for Jerome Jozwiak in her third amended complaint. *See* [Docket Entry No. 54, ¶ 7]. Nonetheless, in the interest of judicial economy to prevent further unnecessary litigation, the Court will address the substance of the plaintiff's allegations against Judge Brown.

under Texas Code of Criminal Procedure Article 15.17(c),[11] because her appearance before Judge Brown at the detention center was an appearance before a magistrate for statutory warnings – not an arraignment. Therefore, Article 15.17(c) is applicable.

An appearance before a magistrate for statutory warnings is for the purpose of complying with *Miranda* requirements.[12]  *See McGee v. Estelle*, 625 F.2d 1206, 1209 (5th Cir. 1980) (overruled on other grounds). Under Texas law, such an appearance does not involve counsel for the state, nor is it a formal charge. The Texas Code of Criminal Procedure provides that an arraignment occurs after the filing of formal charges. *See* Tex. Code Crim. Proc. Art. 26.01.[13] No charges had been filed at the time that Judge Brown met with the plaintiff at the detention center. Instead, the evidence demonstrates that the plaintiff was brought before Judge Brown to receive her Article 15.17(c) warnings, which the Texas Court of Criminal Appeals has held does not constitute an arraignment. *See Watson v. State*, 762 S.W.2d 591, 594, n.4 (Tex. Crim. App. 1988). Therefore, the defendants' motion is granted on this issue.

### C.     Declaratory and Injunctive Relief

The Court grants the defendants' motion with respect to declaratory and injunctive relief because the Court determines that the plaintiff has shown no genuine issue of material fact that could entitle her to either remedy. She is not entitled to a declaratory judgment because she has suffered no injury for which this Court can give relief, as explained in Sections **V. A.-B.**. *supra*. She is not entitled to injunctive relief because she cannot demonstrate that she will suffer an

---

[11] "When a deaf accused is taken before a magistrate under this article or Article 14.06 of this Code, an interpreter appointed by the magistrate qualified and sworn as provided in Article 38.31 of this Code shall interpret the warning required by those articles in a language that the accused can understand, including but not limited to sign language."

[12] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

[13] "In all felony cases, after indictment, . . . there shall be an arraignment."  *See also, id.* at art. 26.02 ("An arraignment takes place for the purpose of . . . hearing [a defendant's] plea.").

injury in fact – *i.e.*, a "real and immediate threat" of repeated future harm – if the Court does not grant an injunction.  *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983).

A plaintiff seeking an injunction against a local or state government must present facts showing "most extraordinary circumstances" before a federal court will intervene in this type of alleged misconduct.  *Rizzo v. Goode*, 423 U.S. 362, 379 (1976).  A single alleged instance of disability discrimination, even if true, is insufficient to justify such an injunction.  *See Midgett v. Tri-County Metro. Transp. Dist. Of Oregon*, 74 F. Supp. 2d 1008, 1013-14 (D. Or. 1999), *aff'd*, 254 F.3d 846 (9th Cir. 2001) (citing, *inter alia*, *Rizzo*, 423 U.S. at 375) ("a strong factual record, showing an intentional and pervasive pattern of misconduct, is necessary to support an injunction against a state, as opposed to a federal, agency").  The Court finds that the plaintiff has offered no evidence entitling her to either declaratory or injunctive relief.  Therefore, the Court grants the defendants' motion for summary judgment.

## VI.     Conclusion

Based on the foregoing discussion, the Court GRANTS the defendants' motion.

It is so **ORDERED**.

SIGNED at Houston, Texas this 6th day of January, 2011.

_____
Kenneth M. Hoyt
United States District Judge